IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Zita L. Weinshienk

Civil Action No. 09-cv-01031-ZLW-CBS

ESTATE OF ROSEMARY BERRY, deceased,
by THERESA BIRD, as personal representative for the ESTATE
OF ROSEMARY BERRY,

    Plaintiff,

v.

RALPH JAMES BERRY, JR;
AGILENT TECHNOLOGIES, INC., a Colorado foreign corporation; and
FIDELITY INVESTMENTS INSTITUTIONAL OPERATIONS COMPANY, INC.,
a Massachusetts corporation,

    Defendants.

_____

ORDER
_____

    The matters before the Court are Defendant Fidelity's Motion To Dismiss (Doc. No. 19) and Agilient [sic] Technologies, Inc.'s Motion To Dismiss Pursuant To Federal Rule Of Civil Procedure 12(b)(6) (Doc. No. 21).  The Court has determined that these matters can be determined on the parties' papers without a hearing.

**A.**    **Plaintiff's Claims**

    Plaintiff's First Amended Complaint asserts two claims for relief against Defendants Agilent Technologies, Inc. (Agilent) and Fidelity Investments Institutional Operations Company, Inc. (Fidelity) under the Employee Retirement Security Act

(ERISA)[1]: a first claim for relief for benefits pursuant to 29 U.S.C. § 1132(a)(1)(B), and a second claim for relief alleging refusal to supply requested information pursuant to 29 U.S.C. § 1132(a)(1)(A) and 29 U.S.C. § 1132(c).  Plaintiff acknowledges in its response to the present motions that its second claim for relief is time-barred under the applicable statute of limitations, and has agreed to dismiss it.[2]  Thus, the second claim will be dismissed.  Only the first claim for relief therefore is at issue on this motion.  Plaintiff has asserted additional claims against Defendant Ralph James Berry, Jr., which are not presently at issue.

Plaintiff alleges as follows:  Rosemary Berry worked for Hewlett Packard Company and Agilent for over 28 years.[3]  During her employment, Ms. Berry accumulated several retirement and investment accounts, including a 401(k) account that was administered by Agilent and managed by Fidelity as trustee.[4]  Plaintiff acknowledges in its response brief that Ms. Berry's husband, Defendant Ralph James Berry, Jr, was the designated beneficiary on Ms. Berry's Agilent 401(k) account.[5]  Ms. Berry retired from her employment on March 15, 2002.[6]  Sometime early March, 2007, Ms. Berry consulted with a divorce lawyer, because she was planning to divorce Mr.

---

[1] 29 U.S.C. § 1001 et seq.

[2] An award of attorney's fees on the dismissed claim, as requested by Agilent, is not appropriate here.

[3] First Amended Complaint (Doc. No. 15) at ¶ 15.

[4] Id.

[5] See Plaintiff's Response To Agilent Technologies, Inc,'s Motion To Dismiss Pursuant To Federal Rule Of Civil Procedure 12(b)(6) And To Defendant Fidelity's Motion To Dismiss (Doc. No. 26) at 5.

[6] First Amended Complaint (Doc. No. 15) ¶ 15.

Berry.[7]  On March 9, 2007, Ms. Berry spoke with an investment advisor at Edward Jones Investments (Edward Jones) with the purpose of transferring her investments, including her Agilent 401(k) account, into new accounts managed by Edward Jones.[8]  On March 28, 2007, with the assistance of her Edward Jones investment advisor, Ms. Berry completed the necessary documents to close her Agilent 401(k) account and have the funds from that account distributed to her.[9]  That same day, Ms. Berry and her Edward Jones Investment advisor forwarded the proper documents to Fidelity, and also called Fidelity to request that the funds from the Agilent 401(k) be distributed by check made out to Edward Jones, for the benefit of Rosemary Berry.[10]  Agilent and/or Fidelity closed Ms. Berry's 401(k) account as requested and mailed Ms. Berry a check for the total proceeds of the account.[11]  Ms. Berry set up the new account with Edward Jones into which the Agilent 401(k) funds were to be transferred, and designated her daughter, Theresa Bird, as the sole beneficiary on the Edward Jones account.[12]

On April 6, 2007, Ms. Berry and her Edward Jones investment advisor called Fidelity and reported that the check had not yet been received.[13]  Fidelity informed them that a check had been sent, but, because it had not been received, Fidelity would issue

---

[7] Id. ¶ 13.

[8] Id. ¶ 16.

[9] Id. ¶ 17.

[10] Id. ¶ 18.

[11] Id. ¶ 39.

[12] Id. ¶ 20.

[13] Id. ¶ 21.

a new check which should arrive during the week of April 16, 2007.[14]  Ms. Berry thereafter "received one of the checks issued by Fidelity . . . ."[15]  However, Ms. Berry died on April 12, 2007, before any check was delivered to Edward Jones.[16]  Plaintiff was separated but not divorced from Ralph Berry when she died.[17]  In her will, Ms. Berry bequeathed all of her assets and possessions to Ms. Bird.[18]

After learning of Ms. Berry's death, Mr. Berry entered Ms. Berry's home without authorization and removed various documents including the first Fidelity check, which, following the logic of Plaintiff's allegations, apparently had been delivered to Ms. Berry even though she believed that she had not received it.[19]  When the second Fidelity check arrived two days later, Mr. Berry took that check as well.[20]  Mr. Berry destroyed both checks, and contacted Fidelity and/or Agilent and demanded that they cancel the checks.[21]  After providing what Plaintiff alleges were fraudulent documents to Fidelity and/or Agilent supporting his claimed right to the funds, Fidelity and/or Agilent paid the 401(k) proceeds to Mr. Berry, and Mr. Berry deposited the funds into an account belonging to him managed by Smith Barney.[22]  Ms. Bird contacted Agilent and/or

---

[14] Id.

[15] Id. ¶ 22.

[16] Id.

[17] Id. ¶ 13.

[18] Id. ¶ 14.

[19] Id. ¶ 23.

[20] Id. .

[21] Id. ¶¶ 24-25.

[22] Id. ¶¶ 25-28, 34.

Fidelity on several occasions to notify them about Ms. Berry's death, the opening of her estate, and that ownership of the 401(k) account was claimed by the estate.[23]  Ms. Bird was informed that the account was closed and that the funds had been distributed to the beneficiary.[24]

**B.     Analysis**

   **1.     Legal Standard**

Defendants Agilent and Fidelity move to dismiss the claims against them[25] in this action pursuant to Fed. R. Civ. P. 12(b)(6).  "[T]o withstand a motion to dismiss, a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'"[26] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,"[27] and legal conclusions couched as factual allegations are insufficient.[28]  Thus,

> a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than

---

[23] Id. ¶ 29.

[24] Id. ¶ 30.

[25] Defendant Ralph James Berry, Jr. has filed an Answer to the First Amended Complaint (See Doc. No. 18).

[26] Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

[27] Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949 (2009).

[28] See id. at 1949-50.

> conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.[29]

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[30] Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[31]

### 2. Whether the Fidelity 401(k) Account was Closed on the Date of Ms. Berry's Death

Defendants argue that Plaintiff's claim for benefits must be denied because Mr. Berry was the rightful beneficiary of the Agilent 401(k) account funds, and the funds thus were properly transferred to him after Ms. Berry's death. Plaintiff responds that the Agilent 401(k) account was closed before Ms. Berry's death, at which point Mr. Berry's rights as beneficiary were extinguished. In other words, according to Plaintiff, Mr. Berry cannot have been the beneficiary of the Agilent 401(k) account on the date of Ms. Berry's death because the account no longer existed on the date of Ms. Berry's death. Defendants reply that the 401(k) account was not closed prior to Ms. Berry's death because the checks sent to Ms. Berry were not negotiated before her death.

---

[29] Id. at 1950.

[30] Id. at 1949 (quoting Twombly, 550 U.S. at 545).

[31] Id. at 1950.

Plaintiff has pleaded in her First Amended Complaint that the Fidelity account was closed prior to her death.[32] On a Rule 12(b)(6) motion to dismiss, the Court accepts all well pleaded factual allegations as true, and then determines whether those allegations "plausibly give rise to an entitlement to relief."[33] Neither party has discussed whether the closure, or non-closure, of Ms. Berry's 401(k) account is an issue of fact or law. In the absence of any argument from counsel, it appears to the Court that the issue is a mixed question of fact and law.

In support of its argument that the account remained open because the check was not negotiated, Defendant Fidelity cites to the court's statement in <u>Dean Witter Reynolds, Inc. v. The Variable Annuity Life Ins. Co.</u>[34] that "[i]n general, a debt is discharged not when the debtor mails a check, but when the creditor negotiates the check."[35] However, <u>Dean Witter</u> goes on to note that this presumption may be rebutted by evidence of instructions or agreement to the contrary between the creditor and the debtor.[36] Plaintiff here has alleged that Ms. Berry issued express instructions to Defendants to close her account, and that Defendants did so prior to issuing the checks and prior to her death. Whether there is evidence to support these allegations is not for

---

[32] <u>See</u> First Amended Complaint (Doc. No. 15) at ¶ 39.

[33] <u>Iqbal</u>, 129 S. Ct. at 1950.

[34] 373 F.3d 1100 (10th Cir. 2004).

[35] <u>Id.</u> at 1108.

[36] <u>Id.</u>

the Court's consideration on this Rule 12(b)(6) motion.  The allegations certainly are plausible.

There is authority for the proposition that a bank account may be closed prior to the negotiation of the bank's check to the account holder for the account balance.  In Resolution Trust Corp. v. Gill,[37] the Internal Revenue Service (IRS) served a notice of tax levy upon a defendant's bank just as the defendant was attempting to close her Individual Retirements Accounts held there.  The United States Court of Appeals for the Third Circuit determined that whether the accounts were closed at the time the levy was served, and thus whether the levy was effective in seizing the funds in the accounts, hinged on whether service of the levy preceded the bank's issuance of the checks for the account balances to the defendant, which was a material issue of fact.[38]  The court did not consider negotiation of the checks as a prerequisite to closure of the accounts.  In fact, generally, the contractual relationship between a bank and a depositor ceases at the time the depositor makes a demand for his or her money.[39]  Plaintiff has satisfactorily pleaded a claim for relief under 29 U.S.C. § 1132(a)(1)(B).

While both Defendants contend that Plaintiff should not have presented arguments in her response brief concerning exhaustion of remedies when that issue

---

[37] 960 F.2d 336 (3rd Cir. 1992).

[38] Id. at 341-42.

[39] See 9 C.J.S. *Banks and Banking* § 276 (2009).  The Court agrees with Fidelity, as suggested in Fidelity's Reply brief, that banking and negotiable instruments law is not necessarily controlling in this ERISA, case, but nonetheless is useful in determining issues upon which ERISA may be silent.  See Fidelity's Reply In Support Of Motion To Dismiss (Doc. No. 32) at 3 n.1 (citing Miller v. Monumental Life Ins. Co., 502 F.3d 1245, 1249-50 (10th Cir. 2007)).

"was never argued by Fidelity or Agilent,"[40] Fidelity in fact did raise the issue of exhaustion of remedies in its motion, albeit in a truncated fashion,[41] and Plaintiff had the right to respond.  However, the Court does not reach the issue of exhaustion of remedies on this motion.

Accordingly, it is

ORDERED that Defendant Fidelity's Motion To Dismiss (Doc. No. 19) and Agilient [sic] Technologies, Inc.'s Motion To Dismiss Pursuant To Federal Rule Of Civil Procedure 12(b)(6) (Doc. No. 21) are denied.  It is

FURTHER ORDERED that the hearing previously set in this case for September 2, 2009, is vacated.  It is

FURTHER ORDERED that the second claim for relief against Defendants Agilent Technologies, Inc. and Fidelity Investments Institutional Operations Company, Inc. for Refusal To Supply Requested Information Pursuant To ERISA 29 U.S.C. § 1132(a)(1)(A) and § 1132(c) is dismissed with prejudice pursuant to the parties' stipulation, the parties to pay their own costs and attorney's fees.  It is

---

[40]Fidelity's Reply In Support Of Motion To Dismiss (Doc. No. 32) at 6-7; see also Agilent Technologies, Inc.'s Reply . . . (Doc. No. 33) at 4.

[41]See Defendant Fidelity's Brief In Support Of Its Motion To Dismiss Pursuant To Fed. R. Civ. P. 12(b)(6) (Doc. No. 20) at 7.

FURTHER ORDERED, that in accordance with the Notice Of Dismissal Of Defendant Fidelity Investments Institutional Services Company, Inc. (as distinguished from Defendant Fidelity Investments Institutional Operations Company, Inc.), filed June 2, 2009 (Doc. No. 16), by which Plaintiff voluntarily dismissed Defendant Fidelity Investments Institutional Services Company, Inc. pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i), former Defendant Fidelity Investments Institutional Services Company, Inc. is removed from the case caption in this action.

DATED at Denver, Colorado, this 19th day of August, 2009.

BY THE COURT:

_____
ZITA L. WEINSHIENK, Senior Judge
United States District Court